OCEAN ACCIDENT & GUARANTEE CORPORATION, Limited, et al. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4341.    Decided March 23, 1926.    (245 P. 343.)

1. MASTER AND SERVANT—EVIDENCE IN COMPENSATION CASE HELD TO SUSTAIN FINDING THAT INJURY BY FALL CAUSED DISABILITY (WORKMEN'S COMPENSATION ACT [COMP. LAWS 1917, §§ 3061-3165]). In proceedings by injured employee under Workmen's Compensation Act for an award, evidence *held* to sustain findings of Industrial Commission that injury resulting from fall was a contributing cause of final breakdown of employee.[1]

2. MASTER AND SERVANT—DEFENDANTS HELD NOT DENIED ANY CONSTITUTIONAL RIGHT OF FAIR AND IMPARTIAL HEARING BY MANNER OF CONDUCTING HEARING BEFORE INDUSTRIAL COMMISSION (WORKMEN'S COMPENSATION ACT [COMP. LAWS 1917, § 3149]). In proceedings by injured employee for an award under Workmen's Compensation Act, defendants *held* not denied constitutional right of a fair and impartial hearing before Industrial Commission by examining commissioner's method of conducting it, in view of Comp. Laws 1917, § 3149, not limiting Industrial Commission to any technical or formal rules of procedure, where witnesses giving testimony were not hindered or influenced by examining commissioner, and it did not appear that they did not freely give their opinions on matter about which they were interrogated.

Original proceeding by the Ocean Accident & Guarantee Corporation, Limited, and another to review an award of compensation of the Industrial Commission in favor of Archie U. Daniels, claimant. Award affirmed.

---

[1] *Pinyon Queen Min. Co.* v. *Industrial Commission*, 204 P. 323, 59 Utah, 402; *Tintic Milling Co.* v. *Industrial Commission*, 207 P. 1114, 60 Utah, 261; *Milford Copper Company of Utah* v. *Industrial Commission*, 210 P. 993, 61 Utah, 37; *Cherdron Const. Co.* v. *Simpkins*, 214 P. 593, 61 Utah, 493.

Corpus Juris-Cyc. References:
[1] Workmen's Compensation Acts C. J. p. 69 n. 46; p. 115 n. 37.
[2] Workmen's Compensation Acts C. J. p. 114 n. 10; p. 115 n. 32.

*James H. Wolfe,* of Salt Lake City, for plaintiffs.

*Harvey H. Cluff,* Atty. Gen. and *J. Robert Robinson,* Asst. Atty. Gen., for defendants.

GIDEON, C. J.

This is a proceeding to review an award of the Industrial Commission.

The applicant, A. U. Daniels, was employed by one S. J. Singleton to repair the roof of a dwelling house in Salt Lake City, Utah. While so employed on August 14, 1924, he was injured. He fell from the roof to the ground a distance of approximately twelve feet. He was taken home, and remained in bed, or was confined to the house, until September 1, 1924. Between September 1, 1924, and February 1, 1925, he worked, not continuously, but at such times as he could find work, at his trade, that of carpenter. On or about February 1, 1925, applicant's physical condition was such that he could not continue at his work. At that time he was examined by his family physician. He was found to be suffering with a serious heart lesion, which is diagnosed as myocarditis. The applicant was then advised of his condition, and directed to rest. He was paid compensation for the loss of time from August 14 to September 1, 1924. The present application is for additional compensation.

The commission, among other things, found:

"That at the time of said accidental injury applicant was suffering from a heart lesion, but that his powers of resistance were such that he could, and did, perform his duties as a carpenter satisfactorily and without disability up to the time of said injury of August 14, 1924.

"We further conclude that the fall, acting as a sudden strain or exertion or overload on an already weakened heart, had the effect of precipitating the final decompensation of the heart action, which reached the stage on or about February 1, 1925, that rendered the applicant temporarily totally disabled for any kind of labor. How much of this disability is due to the pre-existing disease and how much to the accident no one can tell. Of the two factors in all

probability the fall is the lesser, but it is a factor concurrent with the diseased condition, and has contributed to the general disability to such an extent that we are convinced that, except for the fall, Daniels would not be totally disabled as he is.

"We further conclude that with rest and proper medical treatment further improvement of Daniels' condition is indicated."

Based upon these findings, the commission entered its order:

"That said S. J. Singleton or the Ocean Accident & Guarantee Corporation pay to Archie U. Daniels such an amount of money as will compensate him for his lost earnings due to his inability to take certain work because of his physical condition between September 1, 1924, and February 1, 1925, and beginning on February 1, 1925, to pay a compensation at the rate of $16 per week, and to continue said payments during the period that he is totally disabled; all accrued payments to date to be made in a lump sum. sum.

"It is further ordered that such medical treatment as is indicated by the condition of the applicant be furnished by the employer or the insurance carrier."

It is the contention here that it is established without controversy that the applicant prior to the injury was suffering from a chronic condition of the heart, and that his physical condition on and after February 1, 1925, was due to a disease existing prior to the injury, and was not caused by the injury, and therefore the finding that the injury was a concurring cause of the physical condition is not supported by any substantial evidence. In other words, that just what produced the physical condition of the applicant as determined by the examining physicians on February 1st was problematical, and it could not be definitely determined whether the fall contributed to the physical condition of the applicant or whether that condition was due to or the result of a pre-existing cause or disease.

The theory of the commission apparently was, and that is the contention of counsel here, that, notwithstanding the diseased condition of the heart prior to the accident, the accident was a concurring cause of the condition that existed after February 1st. The concrete question for this court to determine is whether there is any substantial competent evidence in the record to support the commission's findings.

Such findings are based upon the testimony of the applicant, his wife, and physicians who examined him.

The applicant testified that he had never been a very strong or robust man, but that he had always been able to do his work as a carpenter. He further stated that he did not regain his strength after the accident of August 14, 1924, and did not feel well much of the time between that date and February 1, 1925. He also stated that he had had no sickness of recent years, except "colds or something of that kind, grippe or something like that, but it wasn't a continuous thing. I was practically as normal as the average man." His wife corroborated him.

Dr. Clark, who also examined the applicant about June 5, 1925, in the course of his testimony, said:

"I will say this: The whole condition was complex. The man had a diseased heart. He had a fall which probably contributed to a further strain being thrown on that heart at that time. That is the first part of your hypothetical question. He returned to his work, and the chances are he returned to work without fully having regained tone. You have a contributing factor there to still further tend to weaken an already weakened heart. I regard the condition I found in June as the results of three separate and distinct conditions: Primarily, an already existing disease; secondly, a fall; and, thirdly, a period of work between the time of the fall and the time of the man's incapacitation. * * * I think the fall undoubtedly had some contributing effect in bringing about, or in inciting or setting up, the decompensation which occurred. I think of the two contributing causes it was very possibly the lesser, for this reason: That, had the man not returned to work as soon as he did, and had he not exerted himself at that time in labor, the chances are that decompensation might not have occurred as it did. But I still maintain, just as I have maintained in my letter, that of course the fall, acting as a sudden strain or exertion or overload on an already weakened heart, certainly had a contributing effect in producing the final decompensation."

Dr. Clark, who also examined the applicant about June 5, 1925, after having stated that the applicant gave to him a history of the injury, and in answer to a question propounded by the examining commissioner, said:

"The intent of your question is to ask what effect the fall would have on this condition. I think it would only have an indirect effect. The condition of endocarditis in my mind had been there

for a long while, and may be present in a number of cases without giving any subjective symptoms to the patient; in fact, the patient might not know the condition was there until some extra heavy physical exertion occurred, or else some other infection occurred on top of that. Then the subjective symptoms would appear. He told me he hadn't had any trouble with his heart, as he expressed it, before that time.

"Q. Do I understand you to mean by that that it would take this accident or strain to direct the applicant's attention to it? Would that be only a coincident or a contributing factor? A. It would be a contributing factor, but not a primary cause of the trouble. * * * I say this: With those conditions of the heart, if the primary cause of that trouble is relieved, as I think it was in this case, the tonsils having been removed, as he stated, I think, about ten years before that, and I have in mind that no doubt that was the cause of this primary trouble with the heart. Now, I say in a lot of these cases they may go on after the focus of infection is removed, then those cases go on from childhood to old age, and carry on a certain amount of this incapacitation of the heart to old age without showing any subjective symptoms, if this individual goes along under ordinary conditions of life without any extra overexertion, or if no other focus of infection flares up this condition again."

Dr. Viko examined the applicant on or about June 5, 1925. He testified at the hearing before the commission in part as follows:

"The primary cause of his heart condition was rheumatic infection some time during his life, probably before the fall. The decompensation probably was the result of more than one factor. Of these the injury, with the physical and mental strain entailed, may have been one factor. His work, both past and after the injury, his age with the associated arteriosclerosis, probably were other factors. Possibly if there was an infection following the fall, as suggested by Dr. Sprague yesterday, this also may have entered into the decompensation. I do not believe it possible to state defiinitely the relative importance of these different factors. It seems like asking which gallon of water in the reservoir broke the dam."

Dr. Sprague, the family physician, testified to the effect that he had known the applicant for seventeen years; that he had attended applicant a good many times, and stated that he (applicant) "has always been thin, he has had attacks like anybody else of acute colds, and I think he has a method of controlling those coughs himself"; that "for his type

he had always had a lot of energy for the type of man he
is. He has always been thin; has always been a sort of
wiry man.''

The testimony of the applicant and his wife is further to
the effect that in the years preceding the injury applicant
was able to do his work as a carpenter, and that, so far as
known, the disease of the heart did not interfere with, or
hinder, applicant in his usual and everyday labor.

In the light of the foregoing testimony, it cannot be said,
in our judgment, there is no substantial competent
evidence in the record to support the findings and con-
clusions of the commission that the injury resulting
from the fall was a contributing cause of the final breakdown
of the applicant.

The third headnote to *Pinyon Queen Min. Co. v. Ind.
Comm.,* 204 P. 323, 59 Utah, 402, reads:

"Under Comp. Laws 1917, § 3112, as amended by Laws 1919, c. 63,
providing that the words 'personal injury by accident arising out
of or in the course of employment' shall not include a disease
except as it shall result from the injury, where a dormant disease
was revived or accelerated by an accidental injury and disability
resulted, the injured workman was entitled to compensation for the
entire period of his disability, though prolonged because of the
disease."

The rule of laws stated in the foregoing headnote has the
approval of this court in later decisions; namely: *Tintic
Milling Co. v. Ind. Comm.,* 207 P. 1114, 60 Utah, 261;
*Milford Copper Co. of Utah v. Ind Comm.,* 210 P. '993, 61
Utah, 37; *Cherdron Const. Co. v. Simpkins,* 214 P. 593, 61
Utah, 493.

The third headnote to *Farrow v. What Cheer Clay Products
Co.,* 200 N. W. 625, 198 Iowa, 922, reads:

"Compensation may be awarded, although there was pre-existing
heart disease, if disease was aggravated or accelerated by accidental
injury."

See, also, *Dickson Const. & Repair Co. v. Beasley,* 126 A.
907, 146 Md. 568; *Gilcrest Lbr. Co. v. Rengler,* 190 N. W.
578, 109 Neb. 246, 28 A. L. R. 200, note.

There is an additional question stressed in the brief of
counsel for the insurance carrier. It is contended that his

client was denied a fair and impartial hearing before an unprejudiced tribunal. It is asserted in argument that this claim is the most vital question involved in this review. It is necessary, therefore, that we briefly consider this contention of counsel, notwithstanding there is testimony in the record to support the commission's findings.

The hearing was had before one of the commissioners. The testimony was reported to the other commissioners. Serious complaint is made in this court of the conduct or method pursued by the commissioner at the hearing. The gravamen of counsel's complaint is stated in his brief as follows:

"We assert that the examining commissioner throughout the hearing evidenced a biased attitude of mind in favor of the applicant and that from the very beginning he had prejudged the case in the claimant's favor, and that he so conducted the hearing as to make the record favorable for the applicant for the purpose of supporting his prejudged conclusion. * * * A judge, or other person sitting in a judicial or quasi judicial capacity, may, of course, have a biased mind from the very beginning. But, as long as he keeps silent and does not influence the jury or suggest to the witnesses how they should answer or prejudice a case in favor of one party or the other, no visible error can be detected. If, however, his bias stimulates him to take an active part in making a record, which not only he is to look over and judge from, but other triers or finders of the fact are to use as a basis of their conclusions, then certainly prejudicial error has been committed."

The leading questions propounded by the commissioner and the suggestions apparent in the language used, the manner of propounding questions, the rulings of the commissioner in the admission of ex parte statements as evidence, and limiting counsel on cross-examination, afford at least some support to counsel's complaint. The Legislature, has, however, by express provision (Comp. Laws Utah 1917, § 3149) stated that the Industrial Commission is not bound by the usual common or statutory rules of evidence or by any technical or formal rules of procedure. The commission is given the power to adopt its own rules of procedure. Rules promulgated by the commission must not, of course, deprive the parties of their constitutional right of having their day in court and of having the cause determined after an impartial hearing. It is not, therefore, the right or the duty of this court to suggest

Certiorari

the procedure to be adopted by the commission in efforts to elicit facts of any hearing before it. Doubtless the members of the Industrial Commission or other fact finding body not limited by the ordinary rules relating to the introduction of testimony are at times justified in adopting "short cuts" to get at the ultimate facts in a matter under consideration. But in adopting those short cuts or new rules for determining facts care should be exercised not to deprive any party of every fair means of eliciting the facts to be finally determined or not to unnecessarily limit cross-examination of witnesses before it. The facts found must and do determine the property rights of the parties to a controversy. The importance to the parties of the facts found is a weighty reason why every legal or reasonable privilege should be accorded parties in the effort to ascertain the actual facts.

In the instant case the commission acted jointly in making the findings and entering the order now under review. The findings of the commission, as we have found, are sustained by substantial competent evidence. It does not appear from the record that the witnesses giving the testimony quoted were in any way hindered or influenced by the examining commissioner, nor does it appear that these witnesses were not given an opportunity to, or that they did not, freely give their opinions respecting the matter about which they were interrogated. In that state of the record we are unable to conclude that the plaintiffs herein have been denied any constitutional right of a fair and impartial hearing.

The award is affirmed.

THURMAN, FRICK, CHERRY, STRAUP, JJ., concur.