Mrs. H. D. Morrill *v.* Charles Bianchi & Sons, Inc.

In Vacation after November Term, 1934.

Present:   Powers, C. J., Slack, Moulton, Thompson, and Sherburne, JJ.

Opinion filed January 2, 1935.

*Webster E. Miller* and *Finn & Monti* for the claimant.

*J. Ward Carver* for the defendant.

SLACK, J.  Hiram Morrill, while operating a carborundum saw for defendant, fell off the platform of the machine and injured his left hip, and, it was claimed, his left side and chest, and died of acute pulmonary tuberculosis seven weeks later. This proceeding is brought by his widow under the Workmen's Compensation Act, on behalf of herself and two alleged dependent children, James and Mary, to recover compensation. The commissioner of industries found that the children were not dependents, but that the widow was, and awarded her compensation to the time of Morrill's death.  She appealed to Washington county court, where a trial by jury was had.

At the close of claimant's evidence defendant moved for a directed verdict on the grounds, in effect, that there was no evidence tending to show that the fall and resulting jar and bruises Morrilll received served to infect his system with the germs of tuberculosis; that the evidence showed that he had silicosis at the time he was injured; that the germs of disease do not enter

the system through such an injury as he received; that the disease from which he died did not result from his injury but from his occupation as a granite cutter, and that if his fall and the resulting jar and injuries served to accelerate the action of it and produce death earlier than the disease would otherwise have done, compensation was not allowable under our act because his disability and death did not result from accidental injuries. It also moved for a directed verdict as to the children on the ground that the evidence did not show that they were dependents within the meaning of the act. The motion respecting the children was granted subject to claimant's exception, and as to the other grounds it was denied. At the close of all the evidence such part of the motion as had previously been denied was renewed; it was again overruled, and defendant excepted.

Several questions were submitted to the jury, but no general verdict unless question 8 be so construed. Certain of the questions were, in substance, as follows: (1) Was Mary a dependent of deceased at the time he was injured? (2) A like inquiry regarding James. (3) Did the injury the deceased sustained weaken his resistance to disease to such an extent that he contracted a disease or condition that caused his death at the time he died? (6-a) If there was present in the deceased at the time of his injury any diseased condition, what was the nature of it? (7) Would Morrill have died when he did from any disease or condition present in his body at the time he was injured unless such injury materially aggravated or accelerated such disease or condition? (8) Is claimant entitled to death benefit under the Workmen's Compensation Act?

The remaining questions may be summarized as follows: Did deceased have a condition at the time he was injured that rendered him more susceptible to disease from such injuries? If so, did the injury influence such condition so as to cause death earlier than would have otherwise occurred? Did the injury sustained by deceased materially assist in bringing about any condition that in turn caused his death earlier than it would otherwise have occurred, and, if there was present in the deceased at the time of his injury any diseased condition, was it materially influenced by the injury so as to cause death earlier than it would otherwise have occurred? The claimant requested the court to direct the jury to answer question 6-a "Silicosis"; question 7 in the negative, and the rest, except 2 about which

nothing was said, in the affirmative, and excepted to its refusal so to do. All questions, however, were answered as claimant desired except 1, 2, and 3, which were answered in the negative.

The case is here on exceptions by both parties. We first notice those of defendant. The merit of its exception to the overruling of its motion for a directed verdict depends upon what the evidence shows regarding the cause of Morrill's disability, and death on October 8, 1932, and the construction to be given the final clause of P. L. 6485, sub-division IV, which is as follows: " 'Personal injury by accident arising out of and in the course of such employment' to include an injury caused by the wilful act of a third person directed against an employee because of his employment, but not to include a disease unless it results from the injury."

That Morrill received personal injuries by accident arising out of and in the course of his employment about eleven o'clock in the forenoon of August 27, 1932, was thereafter totally disabled until his death, and died the 8th of the following October of acute pulmonary tuberculosis, is not disputed.

The evidence tended to show that he was forty-seven years old when he died; that he was a granite cutter by trade, and had worked in and about granite sheds for approximately twenty-nine years prior to his injury; that he was apparently in good health and was able to and did, work most of the time when work was obtainable; that he fell from a platform on which he was working, and thereby sustained injuries to his left hip, side, and chest which extended up to the left nipple.

The medical evidence, briefly stated, tended to show that at the time he was injured he had silicosis, which is a thickened, fibrous condition of the lung cells caused by the inhalation of quartz dust, and latent or inactive tuberculosis; that immediately following the accident he suffered severe pain in the left side and chest and the next day developed traumatic pleurisy; that four or five days later he developed pneumonia; that on September 10 he had very marked pleurisy extending throughout the right chest, and the left chest throughout the front and at the base in back; that his condition was such that he was confined to his bed ever after the day following the injury until his death. It also tended to show that most adult persons carry tubercular germs in their system, either latent or active; that the former type may become active at any time whenever conditions favor

or invite their activity; that such conditions arise, among other ways, from inflammation or a lowered vitality or power or resistance, which such injuries as Morrill received tend to produce. It further tended to show that Morrill's conditions immediately following the injury were caused thereby, and that these "lighted up," or put in action, the theretofore apparently latent tubercular germs in his system resulting in acute tuberculosis that caused his death earlier than it would otherwise have occurred. In other words, the evidence tended to show that Morrill died from a pre-existing disease which was aggravated and accelerated by his injuries, and died earlier than he would but for such injuries. The motion, therefore, was properly denied if the foregoing facts entitle claimant to compensation under the statute above quoted.

In a large majority of the compensation cases, similar in point of fact to the instant case, compensation has been allowed. See note 60 A. L. R. 1299 et seq. But it will be found that many of these arose under statutes so unlike our own, in terms at least, that their authoritative value on the question before us is doubtful. Among such cases are Orff's Case, 122 Me. 114, 119 Atl. 67; Patrick v. J. B. Ham Co., 119 Me. 519, 111 Atl. 912, 13 A. L. R. 427; Madden's Case, 222 Mass. 487, 111 N. E. 379, L. R. A. 1916D, 1000; Glennon's Case, 236 Mass. 542, 128 N. E. 942; Guay v. Brown Company, 83 N. H. 392, 142 Atl. 697, 60 A. L. R. 1284; Fraze v. McClelland Co., 200 Iowa, 944, 205 N. W. 737; Van Keuren et al. v. Devine & Sons, 222 N. Y. 648, 119 N. E. 1083; Guyer v. Equitable Gas Co., 279 Pa. 5, 123 Atl. 590; Hartz v. Hartford Faience Co., 90 Conn. 539, 97 Atl. 1020, and many others. Under the present Connecticut statute (section 1, ch. 306, Public Acts 1921), compensation is allowable for such proportion of the disability as may reasonably be attributed to the aggravation of a pre-existing disease. See Madore v. New Departure Mfg. Co., 104 Conn. 709, 720, 134 Atl. 259, although compensation was there denied on other grounds.

Under the Kentucky statute (Revision 1930, § 4880), which provides that personal injuries by accident shall not include diseases except such as are the natural and direct result of a traumatic injury by accident, nor the results of a pre-existing disease, it was held in Robinson-Pettet Co. v. Workmen's Compensation Board, 201 Ky. 719, 258 S. W. 318, that, where disability is due both to pre-existing disease and injury, compensa-

tion is allowable to the extent of the disability due to the accident. See, too, *B. F. Avery & Sons* v. *Carter*, 205 Ky. 548, 266 S. W. 50. Like effect was given to the Idaho statute (Comp. Stats. 1919, § 6324) in *Hanson* v. *Ind. School District*, 50 Idaho, 81, 294 Pac. 513.

The Indiana Statute [Acts 1915, Ch. 106, § 76, subd. (d)] provides that " 'Injury' and 'personal injury' shall mean only injury by accident arising out of and in the course of the employment and shall not include a disease in any form except as it shall result from the injury." This statute is as limited in terms as our own. But full compensation was allowed in *Krenz* v. *Ferguson Coal Co.*, 85 Ind. App. 347, 154 N. E. 35, where the injury was the strangulation of an existing hernia; in *Owens* v. *McWilliams et al.*, 85 Ind. App. 92, 152 N. E. 841, where the injury accelerated an existing heart disease, and in *Retmier* v. *Cruse*, 67 Ind. App. 192, 119 N. E. 32, where the injury resulted in nephritis which lowered deceased's power to resist a disease to which he was predisposed (tuberculosis) and caused his death earlier than it would otherwise have occurred. See, too, *In re Bowers*, 65 Ind. App. 128, 116 N. E. 842, and English cases there cited.

Under the Utah statute (Laws 1919, Ch. 63, § 3112, subd. 5), the language of which is practically identical with the Indiana statute, and our own, it is held that where a dormant disease is revived or accelerated by an accidental injury causing disability or death, full compensation is allowable. *Pinyon Queen Mining Co.* v. *Ind. Comm.*, 59 Utah, 402, 204 Pac. 323; *Tintic Mining Co.* v. *Ind. Comm.*, 60 Utah, 14, 206 Pac. 278, 23 A. L. R. 325; *Cherdron Const. Co.* v. *Simpkins*, 61 Utah, 493, 214 Pac. 593; *Ocean Accident & Guarantee Corp.* v. *Ind. Comm.*, 66 Utah, 600, 245 Pac. 343. In the first of these cases the dormant disease was syphilis; in the second, tuberculosis, and in the other two, heart disease.

A like construction is given similar statutes in *Pierce* v. *Phelps-Dodge Corp.* (Ariz.), 26 Pac. (2d) 1017; *Hartford Accident & Indemity Co.* v. *Ind. Board*, 38 Ariz. 307, 299 Pac. 1026; *Behan* v. *John B. Honor Co.*, 143 La. 348, 78 So. 589, L. R. A. 1918F, 682; *Fox* v. *United Chem. & Organic Products Co.*, 147 La. 866, 86 So. 311.

There are many other cases, though based on statutes in terms unlike our own, which we think support the award for

compensation in the instant case. Be that as it may, in the foregoing cases the statutes considered, like ours, provide that the *injury* must have been caused "by accident," and that a disease is not compensable "unless it results from the injury," provisions not found in many of the statutes, and the ones most stressed by defendant. Clearly compensation is not allowable under our statute for disability or death resulting solely from so-called occupational diseases.

██ ██ There is no question but that Morrill sustained personal injuries "by accident." The question is whether his disability and death resulted therefrom within the meaning of our statute. The evidence, as we have seen, tended to show that such injuries "lighted up," aggravated, or accelerated a preexisting disease with which he was then afflicted causing disability, and death earlier than would otherwise have occurred. In this respect, the case is not different from those cited, unless made so by the fact that one of the contributing causes to his disability and death was silicosis which is no doubt an occupational disease, so-called. Some of the doctors testified that it is a form of tuberculosis. Others testified that they are separate and distinct diseases, but that the former usually develops into the latter. Be it either way, and assuming, as the evidence tended to show, that Morrill had both at the time he was injured, neither had progressed far enough so that it appreciably affected his ability to work, or would have caused his death at the time it occurred, and perhaps not for many years, or ever, if left to its natural development uninfluenced by the injury. Since this was so, it is not apparent how the nature of silicosis, whether occupational or otherwise, is material to the determination of the question. It cannot be that one who has incipient silicosis when injured is precluded from compensation because it, or consequent ailments, may ultimately result in disability or death or both. If not, at what point in its progress is the prohibitive mark to be placed? While our compensation act is not a substitute for disability or old age pension, and cannot be strained to include that kind of relief, it prescribes no standard of fitness to which the employee must conform, and compensation is not based on any implied warranty of perfect health or immunity from latent and unknown tendencies to disease which may develop into positive ailments if incited into activity by accidental

injury received in the performance of the work for which he is hired.

Disease is defined to be "An alteration in the state of the body or some of its organs, interrupting or disturbing the performance of the vital functions, or a particular instance or case of this; * * * sickness, disorder." Webster's New Int. Dict. Morrill's injuries unquestionably produced such conditions in his body. And, although his disability and death were due to the development of a pre-existing disease that he had in his system, if the injuries were a contributing and proximate cause of such development we think the disease "resulted from the injury" within the meaning of our statute, and that the motion was properly denied.

■ During the argument of claimant's attorney the following took place:

"Mr. Carver: I except to the statement made by counsel respecting this compensation.

Mr. Monti: I withdraw the word "insurance," I meant compensation law.

The Court: Yes, the compensation law is what we are dealing with and nothing else.

Mr. Carver: May we have an exception to that statement?

The Court: You may have an exception to the statement made, but you will not consider it gentlemen, give it no consideration.

Mr. Monti: I intended to make clear compensation protection, and I believe you understood what I had in mind, that the law takes care of these men * * *."

This exception is unavailing. Enough does not appear, except inferentially, to show that anything improper occurred, but if there did, the prompt action by the attorney and the court rendered it harmless. *State* v. *Stacy*, 104 Vt. 379, 404, 160 Atl. 257, 747, and cases cited.

■ Defendant excepted to the failure of the court to hold, and charge as a matter of law, that G. L. 5758 subd. IV, (P. L. 6485 subd. IV) does not include among the things compensable a disease that does not result from an injury which the employee, in this case Morrill, receives, and that the word accident as used in the statute excludes the benefit of compensation for loss due

to disease unless such disease is caused by accidental injury. The only claim now urged in support of this exception is that the court did not define the word "disease" as here used and failed to distinguish between compensable and noncompensable diseases. The court did not in direct terms do either; nor was it necessary in view of the special questions submitted to the jury, unless it be the eighth, which is considered later. By the others the jury were simply asked to find whether certain conditions existed, and if so whether they produced certain results. It was for the court to then say whether such findings entitled claimant to compensation. The information which the court failed to give could not have aided the jury in answering those questions, and therefore was not essential. If the eighth question stood alone, the shortage in the charge would merit serious consideration; but, in effect, this question is nothing more or less than a deduction to be drawn from the answers to the other questions,—the deduction the court would have been compelled to draw from them had this question not been submitted, consequently the defect in the charge, if there is one, does not affect the result.

Defendant excepted to the charge respecting question 7 on the ground that the court stated in substance that if the injury Morrill received materially aggravated or accelerated such a condition or disease which he then had as to materially contribute to its culmination in disability or death, there could be a recovery. It does not appear that the court so charged. Moreover, the claim now made is that there was no evidence tending to show that the disease Morrill had was the result of the injury, or that it was aggravated thereby. This claim was not made below, and for that reason is not considered.

Defendant excepted to the verdict and judgment on the grounds relied upon in support of its motion for a verdict. This exception is without merit for reasons already stated.

We find no reversible error in defendant's exceptions.

The claimant's exceptions present questions concerning the dependency of the children. P. L. 6514, subd. I, provides that "A child, if under eighteen years of age, or incapable of self-support and unmarried, whether ever actually dependent upon the deceased or not," shall be deemed a dependent. Both children were above the age of eighteen years, and unmarried, so the only question is, Were they incapable of self-support?

■ On direct examination, Mrs. Morrill testified that the daughter (Mary) was not employed regularly at the time of Morrill's death. Without more appearing, she was asked: "Q. Was your daughter supported by your husband at the time of his decease?" This was excluded subject to claimant's exception that it was proper as bearing on the question of dependency. Standing alone, this evidence had not the slightest tendency to show that the daughter was incapable of self-support, the test under the statute, and no offer was made to supplement it with other evidence. In the circumstances it was properly excluded. Furthermore, as will be seen, had it been admitted, and had it been favorable to claimant, it would not have changed the result.

■ The claimant excepted to the granting of defendant's motion for a directed verdict as to the children. Although one ground of exception then stated was that it had not been established as a matter of law that the children were not dependents, claimant now admits that she had the burden of showing that they were. The only evidence touching this issue came from Mrs. Morrill, who testified as follows: "Q. At the time of your husband's death was your daughter employed regularly? A. No. * * * Q. Was your daughter working at the time of his decease? A. No. Q. Is your daughter working at the present time? A. Off and on, but not much. Q. Was the boy at home at the time of his (Morrill's) decease? A. No, he wasn't. Q. He was in school? A. Yes. Q. Who contributed toward his education? A. His father. Q. Was he working while he was in school? A. He worked for his board while at school. * * * Q. And was your son supporting himself at the time of your husband's death? A. No. Q. Has your daughter supported herself since her father's death? A. A little."

That this evidence was insufficient to take the case to the jury on the issue of dependency, as to either child, is too clear to admit of doubt. Nor would it have been, had the excluded evidence regarding James been admitted. There was no positive evidence that either child was incapable of self-support, nor did the evidence justify the inference that such was the fact. It is urged that the statute is to be liberally construed. We agree. But we cannot entirely ignore the plain intent of the Legislature in adopting the language used. Manifestly, the purpose of the statute was to provide for some degree of need,

not to invite, promote, or reward idleness. It is a matter of common knowledge that many parents are supporting children who are capable of self-support. To what extent, and in what instances, this is commendable, is no concern of ours. It clearly is permissible. But, when it is sought to charge someone else with such support, a basis for so doing must be found. And the basis in the instant case is that prescribed by the statute, "incapable of self-support."

The Massachusetts statute, G. L. ch. 152, § 32, subd. (c), provides that: "Children under the age of eighteen years (or over that age, if physically or mentally incapacitated from earning) * * * shall be conclusively presumed to be dependents upon the parent." It was held in *Ferriter's Case*, 269 Mass. 267, 168 N. E. 747, 748, where a son twenty-two years of age was seeking compensation as a dependent upon his father, that, since he was not in the class conclusively presumed to be dependent, his dependency was a question of fact, and that he was not a dependent, although it appeared that he lived with his father and relied on him wholly for support, but was not physically or mentally incapacitated from earning. The court said: "Though proof that a person could not have subsisted without aid from the employee is not essential to establish the existence of a relation of dependency (*McMahon's Case, supra*), dependency implies some degree of need. This is a clear inference from the cases in which the financial ability or the ability to work of the alleged dependent has been taken into consideration as material." And following a citation of authorities from that and other states, among which are *Gherardi* v. *Connecticut Co.*, 92 Conn. 454, 103 Atl. 668; *McDonald* v. *Great Atlantic & Pacific Tea Co.*, 95 Conn. 160, 166, 111 Atl. 65; *Benjamin F. Shaw Co.* v. *Palmatory*, 7 Boyce (30 Del.) 197, 202, 105 Atl. 417; *Serrano* v. *Cudahy Packing Co.*, 194 Iowa, 689, 190 N. W. 132; *McDonald* v. *Pocahontas Coal & Fuel Co.*, 120 Me. 52, 57, 112 Atl. 719; *Dazy* v. *Apponaug Co.*, 36 R. I. 81, 89 Atl. 160; *Bortle* v. *Northern Pacific Railway*, 60 Wash. 552, 111 Pac. 788, Ann. Cas. 1912B, it adds: "It follows that a person who is within the class of possible dependents and not within the class of those 'conclusively presumed' to be dependents * * * cannot refrain from the use of resources, including the ability to work, reasonably available to him for his support under all the circumstances of the case and thereby make himself 'dependent' upon the

person who actually supports him.'' In *Taylor* v. *Sulzberger & Sons Co.*, 98 Kans. 169, 157 Pac. 435, 436, which is to be the same effect, the court, after calling attention to the statute of that and other states, said: ''This legislation indicates a somewhat common purpose to shut off compensation to minor dependents when they reach the age of sixteen or eighteen years and are capable of earning wages.'' Without any showing, or offer to show, anything respecting the lack of resources or physical or mental inability of the children in the instant case to provide for themselves, a verdict was properly directed against them. This question was raised in various ways by divers exceptions, all of which are disposed of by what has been said.

The claimant excepted to the charge touching question 3 on the ground that on the evidence the jury should have been instructed to answer this in the affirmative. Since the answer to this question has no bearing on the issue of dependency of the children, and the claimant prevails on the other issue, this is immaterial, and is not considered.

The judgment below, as we understand it, was in favor of Mrs. Morrill and against the children, because not shown to be dependents.

*Judgment affirmed, to be certified to the commissioner of industries.*