## Paul Marsigli Estate et al v. Granite City Auto Sales, Inc. et al

[197 A.2d 799]

December Term, 1963

Present: Holden, C. J., Shangraw, Barney, Smith and Sylvester, JJ.

Opinion Filed February 4, 1964

Reargument Denied February 27, 1964

96

*Monti & Free* for the plaintiffs.

*Richard E. Davis* for the defendant.

**Holden, C. J.** This is a workman's compensation proceeding. The initial award by the commissioner of industrial relations was appealed to the Washington County Court under 21 V.S.A. §670. After an extended trial by jury, four special verdicts were returned favorable to the plaintiffs, the workman's widow and his estate. From the judgment that was entered on these verdicts, the defendants bring the cause to this Court for review of several assignments of error.

Paul Marsigli was the president and general manager of the defendant Granite City Auto Sales, Inc. of Barre, Vermont. This enterprise was an automobile agency and maintained showrooms on North Main Street in that city. On December 12, 1959, about 10 o'clock in the forenoon, the decedent slipped on some ice. His feet went out from under him in a forward direction and he fell backwards on his side and back. At the time of the fall he was crossing the yard of his employer's premises. He got up after his fall

and continued across the yard on to North Main Street and departed from the premises.

Marsigli's destination at the time was not known. There was evidence that it had been his custom to leave the premises about this time of day to obtain a cup of coffee in a nearby dairy bar. There were several other places in and about the immediate neighborhood that Mr. Marsigli visited frequently in connection with his employer's business.

After leaving the premises, Mr. Marsigli shortly returned and continued to work for the remainder of the day. Following his fall, he developed a pain in his right hip. The pain persisted. Medical attention was sought on the day of the fall but the family doctor was not reached until December 14. After consultation with a urologist, the patient was admitted to the Barre City Hospital on December 16, 1959 for further examination. After a temporary release from the hospital over the holiday period, Mr. Marsigli underwent extensive surgery and deep x-ray therapy. He never returned to active service of his employer. His death from cancer occurred April 10, 1960.

At the trial the defendants moved for a directed verdict in their favor on the ground that the plaintiffs had failed to establish that the employee's fall on December 12, 1959, was an accident arising out of or in the course of his employment. The defendants contend there was no evidence in the case to establish that, at the time of the fall, Mr. Marsigli was leaving the premises in order to carry out any duty connected with his employment.

It is of substantial significance that the accident which befell the decedent occurred on the premises of his employer. *Kenney* v. *Rockingham School District* (1963) 123 Vt. 344, 347, 98 A.2d 702. See Larson, The Law of Workmen's Compensation, §15.10. It is also of importance that Mr. Marsigli's duties as president and general manager of the defendant corporation required his attention to both automobile service and sales. These duties took him from building to building and in and about the neighborhood of the defendant's principal location in Barre. It is obvious that his duties did not confine him to any particular station in performing his employment. To the contrary, the marketing and purchase of new and used cars might well have carried the president and general manager

of the business many miles from his base of operation which could be traveled in the "course of his employment."

It is enough to say that an injury arises in the course of the employment when it occurs within the period of time when the employee was on duty at a place where the employee may reasonably be expected to be while fulfilling the duties of his employment contract. *Brown* v. *Bristol Last Block Co.,* 94 Vt. 123, 125, 108 Atl. 922. As to this issue there was no conflict in the evidence. It is undisputed that the accident occurred during working hours and on the garage property, where the employer could reasonably expect Marsigli to be in carrying out the duties assigned.

The fact that it had been the employee's custom to depart from the property to obtain coffee at about this time is insufficient to make a jury question of whether or not the decedent was fulfilling the duties of his employment. Even before the present statute, under principles of common law, the law afforded the worker some latitude in releasing the servant from the confines of his work bench. Thus, it was held that an employee did not forfeit his right of recovery against his master because he had departed from his station to obtain a glass of milk. Our Court went on to point out that the master's duty will attend the servant for incidental trips across the premises, to and from his working place, for purposes not strictly connected with the master's business. *Ingram's Admr.* v. *Rutland Railroad Co.,* 89 Vt. 278, 281, 95 Atl. 544, Ann. Cas. 1918 A, 1191. This concept has persisted in recent authorities, particularly where injury occurs during a rest period on the employer's premises. *Nagle's Case,* 310 Mass. 193, 37 N.E.2d. 474, 477; 1 Larson, *supra,* §15.50.

There is a notable distinction in the present case, where the accident occurred on the premises and the situation which prevailed in *Greenfield* v. *Central Vt. Rwy. Co.,* 114 Vt. 440, 48 A.2d 854, where the injury was inflicted off the employer's property on a public highway. See Larson, Workmen's Compensation, *supra,* §15.12 and §15.51.

Since the evidence on this point was not disputed, nor subject to opposing inferences, there was no error in the trial court's taking this question from the jury by way of a binding instruction. We affirm the trial court's ruling, as a matter of law, on the facts presented, that the fall sustained by Paul Marsigli was an accident arising out of

and in the course of his employment by the Granite City Auto Sales, Inc. This engages the principal question raised by the defendants' appeal.

■ By special verdict, the jury found that Paul Marsigli suffered a fall on December 12, 1959, which materially aggravated or accelerated the developement of a cancerous condition existing in his body on that date so as to cause his death earlier than it would otherwise have occurred. The medical testimony presented a sharp conflict on this question. Despite the divergence in highly competent medical authority on the issue, the jury's verdict must stand if supported by substantial evidence. And we are required to test the sufficiency of the facts from a point of view favorable to the award, if this can reasonably be done. *Gillespie* v. *Vermont Hosiery & Machine Co.,* 109 Vt. 409, 415, 199 Atl. 564.

The presence of cancer at the time of the fall is undisputed. It is equally undisputed that the pain which ensued directly after the fall on the ice was the compelling reason for Mr. Marsigli to seek medical attention from his family doctor.

Up to that time, Mr. Marsigli had pursued a strenuous life in the service of the Granite City Garage. He supervised the work in the repair and paint shops, directed sales operations, demonstrated cars and his usual workday was from eight or nine o'clock in the morning to nine at night. He appeared physically healthy and rugged to his fellow employees and made no complaints about physical ailments or discomfort. His work pace had not slackened before the accident in question.

Following the fall on the ice, pain developed in his back and hips. This condition persisted and caused him to seek medical attention on the day of the accident. The pain persisted to the time he reached medical care and afterward.

Physical examination at that time disclosed the presence of an abnormal growth in the prostate gland, involving a questionable hardness in the region of his right groin. In reporting medical history to the urologist to whom he was referred by the family doctor, the employee stated he had experienced frequent nocturnal urination accompanied by burning sensation, rectal pressure during the previous two or three weeks and had noticed some lameness in the inner aspect of the right thigh. Hospitalization for further clinical study

was prescribed. This examination disclosed extensive evidence of cancer, involving both prostate and the bladder with some destructive change indicated in the pelvic bone structure. After further consultation between Dr. Charles Goyette, the family physician, and Dr. John A. Zagroba, specialist in diseases of the kidney, bladder and male reproductive organs, the patient's life expectancy was estimated at from three to five years.

On January 17, 1960, Mr. Marsigli was re-admitted to the Barre City Hospital and radical surgery was performed. He was discharged from the Barre hospital on January 28, 1960. He remained at home until February 8 when he entered a hospital in Burlington where he received radiation treatments. A month later he entered the Barre hospital where he remained until his death on April 10, 1960.

Richard S. Woodruff, M.D., assistant professor of pathology at the College of Medicine, University of Vermont and chief medical examiner and pathologist for the State of Vermont, was called as an expert witness for the plaintiffs. He was asked this hypothetical question:

Q. Now, Doctor, assuming that on the 12th day of December, 1959, prior to the sustaining of the fall by Paul Marsigli which was testified to in evidence that on the morning of that day he was apparently feeling well and performing his duties in connection with the operation of his garage, which was testified to here; and that on about 10 o'clock on the morning of that day he sustained a fall and his feet fell from under him and he fell on his back, and side also, but in a sitting position; that he developed immediate pain following the fall; that he consulted a physician on the 14th day of December, 1959 and he was examined that day by Doctors Goyette and Zagroba, and that at the time of the fall he was suffering from carcinoma of the prostate and that there was present on the 19th of December the condition that you described on the X-ray film marked Plaintiff's Exhibit 13(a) and which was also described in Dr. Johnston's report, part of which I read, of that date; and that Mr. Marsigli's condition became progressively worse as shown by the records of Barre City Hospital and the Mary Fletcher Hospital which have been

introduced in evidence and which you have examined, and that he died on the 10th day of April, 1960. Making these assumptions, do you have an opinion as to whether or not the death of Mr. Marsigli was hastened by the fall?

Objection was made by the defendants that the question assumed facts which were not in evidence, specifically that it did not appear that the decedent developed pain "immediately" after the fall and that Mr. Marsigli was in apparent good health on the day of the fall. Upon this objection the question was amended by substituting the words "by lunchtime following the fall" for the word "immediately" and "in apparent good physical condition" was employed in lieu of the words "in apparent good health."

After extended and argumentative contradiction between counsel, and the interruption occasioned by presenting connecting proof, the witness answered his opinion was: "That it most probably was hastened by the injury sustained." Motion by the defendant to strike this answer on the ground that there was no evidence that the patient sustained any injury was denied.

Concerning the onset of pain, the record of Mrs. Marsigli's testimony indicates the following was received without objection:

Q. When did your husband first have pain following the fall?

A. Immediately following the accident.

Q. How much pain did he have?

A. Severe pain.

Medical history contained in plaintiffs' exhibit 1, as reported by Dr. Zagroba on December 16, 1959, at the time of the decedent's first hospitalization, states: "Patient was in apparent good health until December 12 when while walking on slippery pavement he slipped and fell on the right hip. Immediately following the fall patient developed pain in the rt. hip. The pain in the rt. hip was persistent and caused a limp which forced him to seek medical attention . . ."

The patient's history as thus reported in the hospital records was supplemented by that taken in Dr. Zagroba's office when he first examined Mr. Marsigli on December 14. (Def. Ex. B) This document from the doctor's office files reported that the patient "has

noted 'lameness' in the medial-aspect of the rt. thigh." It further indicated less recent rectal pressure, burning sensation on frequent nocturnal urination over the last three or four weeks. These symptoms were not disputed. And the question itself concedes the existence of carcinoma at the time of the fall.

The rejection or allowance of hypothetical questions is a matter largely entrusted to the discretion of the trial court. The inquiry should include only data which there is fair possiblity the jury will accept, but the tendency of the evidence is all that is required. *Hathaway's Admr.* v. *National Life Insurance Co.,* 48 Vt. 335, 351; *Seeley* v. *Central Vt. Rwy. Co.,* 88 Vt. 178, 184, 92 Atl. 28. *Platt, Admx.* v. *Shields and Conant,* 96 Vt. 257, 273, 119 Atl. 520.

There is no demand that the question include all of the facts which might be relevant to the opinion requested. The examiner may seek the witness' opinion on any combination of facts within the tendency of the evidence. The sufficiency of the data as well as the soundness of the opinion can be properly tested on cross-examination. 2 Wigmore, Evidence, §§682, 684, 686 (3rd. Ed.). Such is the plain import of our statute as set forth in 12 V.S.A. §1643.

We find no abuse of discretion in the trial court's allowance of the hypothetical question asked of Dr. Woodruff. The hypotheses stated were within the tendency of the evidence concerning the time of pain. As to the condition of the patient's health at the time of the fall, there could have been no misunderstanding. The presence of the malignancy at the time of the fall was admitted. Prior to that time the symptoms had not become so severe as to compel the patient to seek medical assistance. Until this misadventure, the decedent regarded himself as healthy and he was so considered by his family doctor and fellow employees.

Error assigned to hypothetical questions asked of Doctors Coon and Peterson on cross-examination by plaintiffs' counsel are similarly stated. The deficiency claimed concerns when pain developed in relation to the patient's fall. The defendants argue that the pre-existing lameness and accompanying symptoms constituted pain. Whether this discomfort reported by the patient amounted to pain in the accepted sense of the word, or whether acute pain was not experienced until after the fall on December 12, 1959 could have

been decided either way within the tendency of conflicting evidence. No error appears.

In addition to Dr. Woodruff's opinion that the decedent's death was "most probably hastened" by his fall on the premises of the employer, there was expert evidence on the same issue given by Dr. Goyette, the family physician, and Dr. Zagroba. Dr. Goyette testified that Mr. Marsigli was never free from pain following the injury of December 12. It was his opinion "that the fall, the injury, hastened his death."

Dr. Zagroba testified that a fall of the nature sustained by the decedent would and did aggravate the pre-existing cancerous condition. Both of these witnesses concurred in the opinion that the fall shortened Mr. Marsigli's life expectancy below the time expected had the malignancy not been affected by the fall on the ice.

These medical conclusions were vigorously resisted by opposing expert witnesses. The defendants contended the cancerous condition was not affected by the fall. It was argued that the severe trauma which attended the systoscopic examination and the radical surgery performed in diagnosis and treatment were the producing causes of any aggravation or acceleration of the disease that may have been experienced.

Upon this state of the evidence, the problem is essentially medical rather than legal. Whether the employment aggravated, accelerated or combined with existing weakness and disease to produce the final disability is a question of fact. If there is competent medical evidence to support the ultimate conclusion reached by the trier of that fact, the finding will be sustained on appeal.

██ Where the physical processes terminating in death are obscure, competent expert medical testimony is required to remove the final decision from the realm of speculation. *Burton* v. *Holden & Martin Lumber Co.,* 112 Vt. 17, 19, 20 A.2d 99, 135 A.L.R. 512; *Laird* v. *State Highway Dept.,* 110 Vt. 195, 199, 3 A.2d 552. If expert medical evidence establishes a causal connection between the results of the injury incurred in performance of the work for which the employee was hired, and an aggravation or acceleration of the existing disease, the award must stand. *Morrill* v. *Charles Bianchi & Sons, Inc.,* 107 Vt. 80, 87, 176 Atl. 416. This is the effect of our statute even though it be true that the disease, if left to itself, would

in time inevitably produce death, independent of the injury received on the job. *Gillespie* v. *Vermont Hosiery and Machinery Co.,* 109 Vt. 409, 415, 199 Atl. 564; *Laird* v. *State Highway Dept.,* 112 Vt. 67, 87, 20 A.2d 555. For the application of this rule to cancer cases see *Russo* v. *Wright Aeronautical Corporation,* 137 N.J.L. 346, 60 A.2d 263, 264; *Sullivan's Case,* (1962) Mass., 186 N.E.2d 601, 602; 1 Larson, Workmen's Compensation Law, §12.20 p. 172 and 1963 supplement. On the facts presented to the jury, the defendants' motion for a directed verdict on this issue was properly denied.

■ When the jury settled the fact that the fall during employment accelerated the progress of the disease, the injury was compensable. *Laird* v. *State Highway Dept., supra,* 112 Vt. at 86. Our statute makes no exceptional provision for apportionment of the compensation or medical benefits between the injury and pre-existing disease. Without such a provision, there is no requirement that the commissioner of industrial relations, or the county court on appeal, determine the relative contribution of the accident and the prior disease to the final result. Larson, Workmen's Compensation, *supra,* §§12.31, 59.20; 58 Am. Jur. Workmen's Compensation, §274, p. 751.

21 V.S.A. §640, provides in part as follows:

"An employer subject to the provisions of this chapter shall furnish reasonable medical and surgical services and supplies to an injured employee. Such employer shall also furnish reasonable hospital services and supplies, including surgical, medical and nursing services while the employee is confined in the hospital for treatment and care; provided, however, that the amount expended for services and supplies under this section shall not exceed in the aggregate the sum of $5,000.00."

The medical expenses exceeded $5,000.00 dollars and the jury awarded the claimant the maximum. The reasonableness of the amount was discretionary. No abuse of discretion in this regard has been demonstrated.

The jury awarded total disability compensation for 17 weeks. It is conceded that this disability continued from the date of the employee's first hospitalization on December 16, 1959 until his death on April 10, 1960. This covered a period of 16 weeks. Compensation for 16 weeks is all that claimants requested in final argument.

It follows that the jury's award of 17 weeks as specified in special verdict number 2 should be corrected to 16 weeks.

The remaining assignments of error are based on claims of prejudice arising from bringing to the attention of the jury the existence of compensation insurance and the fact that the case had been appealed from the decision of the commissioner of industrial relations.

At the outset of the trial and before the jury had been impaneled, the defendants sought to remove any possible reference to insurance or the fact that the insurance carrier was a party to the proceedings. The request was denied and a continuing exception preserved for the defendants. Later the policy issued to the employer was identified. After a quarrelsome interchange between counsel concerning whether full coverage had been stipulated, the trial court admitted the policy. Defendants' counsel stated in this connection, "I am not sure whether that is the exact policy but it is the policy the company issues, and we certainly don't have any objection if he insists in having the policy in evidence to have it in evidence if that is what he is after. We concede it is the insurance and Mr. Marsigli was the employee."

It appears from the record that during the defendants' final argument to the jury, counsel made some statement to the effect that the only reason for claimants' introduction of the policy in evidence was for purposes of prejudice. To this, plaintiffs' counsel in his final argument stated, "The claimant should be awarded the compensation that this company contracted to pay under the terms of the policy." There was no specific objection to this remark.

Later counsel for the claimants argued, "Is it prejudicial for the insurance company to refuse to abide by its contract?" To this the defendants promptly protested. In sustaining the objection, the court stated the remark concerning the company's standing behind its policy was improper, and instructed the jury to disregard the comment.

In submitting the case, the court identified the insurance carrier as a party defendant. The court instructed the jury that the Travelers Insurance Company was the insurance carrier and liable to pay any sums for which the Granite City Auto Sales, Inc. might be found liable. To this aspect of the charge there was no objection. The name of the carrier was inserted on the form for the special

verdicts which the jury completed. This was done over the defendants' objection.

■■ Under our workmen's compensation act, the liability of an insurance carrier who undertakes to protect an employer is more than that of a mere indemnitor. Its liability is primary and direct. The statute affords the injured employee the option of proceeding directly against the insurer as a party defendant. 21 V.S.A. §693; *DeGray* v. *Miller Bros. Construction Co.*, 106 Vt. 259, 279, 173 Atl. 556; *Morrisseau* v. *Legac*, 123 Vt. 70, 77, 181 A.2d 53. If the decision of the commissioner is appealed to a trial by jury, our statute makes no provision for concealing the carrier's participation in the controversy. Beyond that, we think it is a matter of common knowledge that employers generally assign their risk under the statute to insurance companies. Under these circumstances, the fact of liability insurance is not prejudicial in the sense applicable to private contracts designed to indemnify against fault of an individual wrongdoer. See *Ploesser* v. *Burlington Rapid Transit Co.*, 121 Vt. 133, 137, 149 A.2d 728.

We think there was no occasion to argue the point to the jury. But it appears the question was the subject of comment by the defendants in summation. When the matter exceeded the bounds of propriety, the court struck down the comment as improper. The prompt action by the court saved the transgression from reversible error. *Morrill* v. *Charles Bianchi & Sons, Inc., supra,* 107 Vt. at 88.

■ Neither do we find prejudice in the statement by counsel nor the instructions by the court that the proceedings were on appeal from a decision of the commissioner of industrial relations. The presiding judge took the pains to explain that the case at hand was a new trial of the merits of the controversy. At the conclusion of the charge, the court stressed the point with these instructions:

"Now you are not to concern yourselves in any way with the proceedings which occurred before the Commissioner of Industrial Relations. They are not before you and you have not been told what the results of such proceedings were. They are absolutely no concern to you, ladies and gentlemen. This case is heard de novo, as I have stated, and upon the facts presented here in court and solely on such facts."

Upon these considerations we conclude the issues were fairly tried. The results reached were founded on substantial evidence. Upon the correction required in the number of weeks of compensation specified in special verdict number 2, the judgment order of the Washington County Court is affirmed.

*Paragraph two of the judgment order of the Washington County Court is amended to specify total disability compensation for the period of 16 weeks. As thus modified, the judgment is affirmed. Let the result be certified. Request for permission to reargue is denied. Let full entry go down.*