2007 WY 31

**STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION; and FMC Corporation, Appellants (Petitioner/Employer),**

v.

**Lawrence FAULKNER, Appellee (Respondent).**

No. 06–22.

Supreme Court of Wyoming.

Feb. 22, 2007.

Representing Appellants: Patrick J. Crank, Attorney General; John W. Renneisen, Deputy Attorney General; Steven Czoschke, Senior Assistant Attorney General; Brandon W. Snyder and Thomas A. Thompson, of MacPherson, Kelly & Thomp-

son, LLC, Rawlins, Wyoming; George Lemich, of Lemich Law Center, Rock Springs, Wyoming.

Representing Appellee: Michael D. Newman, Rock Springs, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1]   The Wyoming Workers' Compensation Division ("Division") and FMC Corporation ("Employer") challenge the Medical Commission's permanent partial impairment rating awarded to Mr. Faulkner.  We affirm.

### ISSUE

[¶ 2]   The issue on appeal is:

Whether the Medical Commission erred as a matter of law in failing to allow apportionment of the employee-claimant's impairment award between his non-work related condition and his compensable work related injury.

### FACTS

[¶ 3]   The underlying facts of this case are not in dispute.  Mr. Faulkner began his employment with FMC Corporation in 1988 as an instrument and electrical technician.  In May of 1995, Mr. Faulkner sought medical treatment for non-work related back pain.  Surgery was performed in July and Mr. Faulkner returned to his regular duty employment in December 1995.

[¶ 4]   In 1999, Mr. Faulkner suffered a work-related low back injury, which required additional surgery.  He applied for, and received, worker's compensation benefits.  Mr. Faulkner did not receive a worker's compensation impairment rating for this injury.  He again returned to his employment without restrictions.

[¶ 5]   On December 28, 2000, Mr. Faulkner sustained the work-related injury at issue in this case.  On that day, Mr. Faulkner was driving a golf cart while at work.  The golf cart had been modified by the installation of a rail.  It was necessary for Mr. Faulkner to lift his legs over the rail each time he mounted and dismounted from the cart.  The injury occurred when, after lifting his legs over the rail, Mr. Faulkner felt a "pop" in his lower back.  As he walked across the shop floor, he developed "excruciating pain" in his lower back and down his right leg.  As a result of this incident, Mr. Faulkner was diagnosed with a work-related disc herniation.  Two surgeries were performed.  Mr. Faulkner's condition did not improve with the surgical intervention.  He has been unable to work since the date of the incident.

[¶ 6]   Mr. Faulkner filed a claim seeking permanent partial impairment worker's compensation benefits.  As a result of this claim, Mr. Faulkner underwent two independent medical examinations ("IME").  Dr. Ruttle performed the first IME and rated Mr. Faulkner's whole person impairment at twenty-three percent (23%).  Dr. Ruttle qualified the rating by noting that "[a]pproximately 95% of [Mr. Faulkner's] current disability appears related to prior back injuries and surgeries that preceded alleged injury on December 28, 2000.  The patient's total percent impairment secondary to injury December 28, 2000, is approximately 1%."  Mr. Faulkner objected to Dr. Ruttle's one-percent impairment rating.

[¶ 7]   A second evaluation was performed by Dr. Dall and his conclusions paralleled those of Dr. Ruttle:

In discussing causation and apportionment, I think it is necessary to look at the patient's rating hypothetically at various points in time.  Following his first surgery in 1995, based on our current rating criteria, he would have already qualified for a DRE lumbar category IV impairment (20–23%).  Therefore, the second, third and fourth surgeries, while contributing to the patient's current state of disability, would not contribute significantly to his impairment rating.  Given that he was doing well and was able to return to heavy duty work, I would have certainly placed him in the lower end of the category (20%) at that time.  At most, therefore, the incidents that have occurred between then (1995 and now) would add three percent whole person impairment.

... I, therefore, [concur] with Dr. [Ruttle] that the vast majority of the above impairment award is causally related to his preexisting conditions of 1995 and 1999. I do not have sufficient medical records between 1995 and 1999 to better apportion between those two but, as indicated above, if the decision were to be made upon ratings at previous points in time, the vast majority would be apportioned to the 1995 incident.

Dr. Dall ultimately rated Mr. Faulkner's impairment at three percent (3%). After receiving the results of the two exams, the Division issued its final determination awarding Mr. Faulkner a three percent (3%) impairment rating.

[¶ 8] Mr. Faulkner timely requested a hearing claiming apportionment of the rating was improper. The matter was referred to the Medical Commission pursuant to Wyo. Stat. Ann. § 27–14–405(m).[1] After receiving evidence, the Medical Commission determined that Mr. Faulkner's injury was a material aggravation of a preexisting condition and rated his impairment at twenty-three percent (23%). The Medical Commission did not apportion the rating between Mr. Faulkner's pre-existing condition and the work-related injury, concluding that apportionment was not authorized under Wyoming law.

[¶ 9] Following the Medical Commission's final determination, the Division filed a timely Petition for Judicial Review with the district court. The district court affirmed the Medical Commission's decision. This appeal followed.

### STANDARD OF REVIEW

[¶ 10] When reviewing administrative decisions, we are limited to a determination of the factors specified in Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2005), which provides:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

We have also stated:

"The interpretation and correct application of the provisions of the Wyoming Worker's Compensation Act are questions of law over which our review authority is plenary. Conclusions of law made by an administrative agency are affirmed only if they are in accord with the law. We do not afford any deference to the agency's determination, and we will correct any error made by the agency in either interpreting or applying the law."

*Bailey v. State ex rel. Wyo. Workers' Safety and Compensation Div.*, 2002 WY 145, ¶ 9, 55 P.3d 23, 26 (Wyo.2002) (internal citations omitted) (quoting *State ex rel. Workers' Safety and Compensation Div. v. Garl*, 2001 WY 59, ¶ 9, 26 P.3d 1029, 1032 (Wyo.2001)). We review this case as if it had come directly to this Court from the agency and do not afford

---

1. Wyo. Stat. Ann. § 27–14–405(m) (LexisNexis 2005) provides that: "... Any objection to a final determination pursuant to this subsection shall be referred to the medical commission for hearing by a medical hearing panel acting as hearing examiner pursuant to W.S. 27–14–616."

any deference to the district court's decision. *Bailey*, ¶ 6, 55 P.3d at 25.

## DISCUSSION

■ [¶ 11]  Mr. Faulkner applied for permanent partial impairment benefits in accordance with Wyo. Stat. Ann. § 27–14–405(f) (LexisNexis 2005), which provides that "[a]n injured employee suffering an ascertainable loss may apply for a permanent partial impairment award. . . ." An "ascertainable loss" is defined as "that point in time which it is apparent that permanent physical impairment has resulted from a compensable injury, the extent of the physical impairment due to the injury can be determined and the physical impairment will not substantially improve or deteriorate because of the injury." Wyo. Stat. Ann. § 27–14–102(a)(ii) (LexisNexis 2005).  In determining whether an employee has suffered a compensable injury, we have recognized that a preexisting injury may present a compensable claim "if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the . . . disability for which compensation is sought." *Lindbloom v. Teton International*, 684 P.2d 1388, 1390 (Wyo.1984) (citing 1 Larson's Workmen's Compensation Law, § 12.20, p. 3–276).  *See also Romero v. Davy McKee Corp.*, 854 P.2d 59, 61 (Wyo. 1993); *State ex rel. Wyo. Workers' Comp. Div. v. Fisher*, 914 P.2d 1224, 1226 (Wyo. 1996); *Haynes v. State ex rel. Wyoming Workers' Compensation Div.*, 962 P.2d 876, 878 (Wyo.1998); *Wyo. ex. rel. Wyo. Workers' Safety & Comp. Div. v. Parrish*, 2004 WY 144, ¶ 27, 100 P.3d 1244, 1254 (Wyo.2004).

[¶ 12]  It is undisputed that Mr. Faulkner was injured in the course of his employment and that the injury materially aggravated a pre-existing condition.  Although Mr. Faulkner had prior surgery involving his lower back, at the time of the incident giving rise to this claim Mr. Faulkner was employed on a full-time basis with no medical or physical restriction impacting his employment.  He had previously received worker's compensation benefits for injuries involving his lower back; however, there is no indication in the record that he had received an impairment rating or a permanent disability award.  The Division and the Employer do not dispute that Mr. Faulkner's two back surgeries following the December 28, 2000, injury were causally related to the injury, nor do they dispute that Mr. Faulkner has been unable to return to work since the injury.  They contend, however, that Mr. Faulkner's impairment rating should be reduced by the percentage of impairment attributable to his pre-existing back condition.

[¶ 13]  The Medical Commission declined to reduce the impairment rating and explained:

10. . . . Mr. Faulkner had a two level lumbar fusion in 1995 which was unrelated to his employment.  As a result of that injury and surgery he had an identifiable and ascertainable whole person impairment.  Based on the Guides at Table 15–3, Mr. Faulkner had a 20% whole person impairment under DRE Lumbar Category IV as a result of his 1995 injury and surgery.  Thereafter Mr. Faulkner sustained two work injuries to his low back which required further surgery.  Mr. Faulkner received worker's compensation benefits for these work injuries.  As a result of his 1999 and 2000 work injuries and surgeries to his low back, his whole body impairment has increased to 23% again based on Table 15–3 of the Guides.  However, it does not seem probable that the legislature intended employers to pay for pre-existing permanent partial impairments which are clearly identifiable and quantifiable and which are wholly unrelated to the employee's employment.  Furthermore, the work injuries and subsequent surgeries did not significantly change the nature or extent of that pre-existing permanent partial impairment as determined under Guides.

11.  However, notwithstanding these arguments, the Panel believes that absent clear legislative or Supreme Court guidance, that it must find that Mr. Faulkner is entitled to a 23% whole body impairment based upon the current state of the law.  When presented with the issue of physical conditions pre-existing an employee's employment, such conditions are compensable "if the employment aggravated, accelerated or combined with the disease or infirmity to produce the disability for which com-

pensation is sought." *Matter of Fisher*, 914 P.2d 1224, 1226 (Wyo.1996) (cite omitted). As stated in *Haynes, supra*, benefits are proper if the "work effort contributed to a material degree to the precipitation, aggravation, or acceleration of the pre-existing condition of the employee." **Here, despite an existing impairment and pre-existing condition, there was a material aggravation of that pre-existing condition and an increase in the existing impairment due to work injuries.** The current state of the law appears to require an "all or nothing" approach in such cases.

This rule regarding pre-existing conditions has long been a part of Wyoming's body of worker's compensation law. This rule requires that an employer must take the employee as he finds him. The right to compensation does not depend on an employee's condition of health or upon his freedom from susceptibility to injury whether due to a pre-existing disease, weakness, or condition existing from birth. *Exploration Drilling Company v. Guthrie*, 370 P.2d 362 (Wyo.1962). If a condition makes an employee more susceptible to a particular injury than a typical employee, the employee is entitled to benefits if he is injured on the job. *Fortier v. State ex rel. Wyoming Worker's Compensation Division*, 910 P.2d 1356 (Wyo.1996). *See also, State ex rel. Wyoming Workers' Compensation Division v. Garl*, 26 P.3d 1029 (Wyo.2001); *Frontier Refining, Inc. v. Payne*, 23 P.3d 38 (Wyo.2001); *[State ex rel. Wyo. Workers' Compensation] Division v. Waggener*, 946 P.2d 808 (Wyo. 1997); *Mountain States Tel. & Tel. v. Carpenter*, 736 P.2d 311 (Wyo.1987); *Associated Seed Growers, Inc. v. Scrogham*, 52 Wyo. 232, 73 P.2d 300 (1937). This approach is also recognized in Larson, *Worker's Compensation*, § 59 *et. seq.*

(Emphasis added.) (Footnotes and some internal citations omitted.)

[¶ 14] The conclusion of the Medical Commission provides context and focus for our analysis. As indicated by the Commission, the specific issue presented by the Division and the Employer appears to be one of first impression for this Court. As we understand the decision of the Medical Commission, it determined that Mr. Faulkner suffered from "a clearly identifiable and quantifiable" pre-existing permanent partial impairment of 20% prior to the December 2000 injury. That injury materially aggravated the pre-existing condition and caused an increase of 3% in the existing impairment. The Commission determined that apportionment was not authorized by statute or our case law and held that Mr. Faulkner was entitled to the full 23% impairment rating.

[¶ 15] Although the issue is presented to us for the first time, it has been addressed by courts in other states. The general consensus reached by those courts is that "the employer becomes liable for the entire disability resulting from a compensable accident," unless statutory authority exists to the contrary. 5 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 90.01, at 90–2 (1997) (and cases cited therein). This general rule is known as the "full-responsibility" rule. *Id.* States wishing to combat any perceived inequities in application of the general rule have taken two approaches. *Id.* The first approach is to enact apportionment statutes, "under which the employer pays only for the single member lost in its employment."[2] *Id.* Under the

---

2. Two examples of apportionment statutes enacted by other states are:

Minn.Stat. § 176.101(2005), which provides:

Subd. 4a. Preexisting condition or disability; apportionment. (a) If a personal injury results in a disability which is attributable in part to a preexisting disability that arises from a congenital condition or is the result of a traumatic injury or incident, whether or not compensable under this chapter, the compensation payable for the permanent partial disability pursuant to this section shall be reduced by the proportion of the disability which is attributable only to the preexisting disability. An apportionment of a permanent partial disability under this subdivision shall be made only if the preexisting disability is clearly evidenced in a medical report or record made prior to the current personal injury. Evidence of a copy of the medical report or record upon which apportionment is based shall be made available to the employee by the employer at the time compensation for the permanent partial disability is begun.

second approach, states statutorily create second injury funds, "which ensure that the employee receives the full disability benefits but reimburses the employee for the difference between this sum and what the employer would pay under· an apportionment statute." *Id. See, e.g., City and County of Denver v. Industrial Comm'n,* 690 P.2d 199, 202 (Colo.1984) (explaining that the purpose of establishing its subsequent injury fund was to avoid the harsh result of the "full responsibility" rule).

[¶ 16] Our statutes do not contain an express provision requiring apportionment. Nevertheless, the Division and the Employer claim that apportionment is proper under Wyoming law because of the language contained in Wyo. Stat. Ann. § 27–14–405(g), which provides:

> An injured employee's impairment **shall be rated by a licensed physician using the most recent edition of the American Medical Association' s guide to the evaluation of permanent impairment.** The award shall be paid as provided by W.S. 27–14–403 for the number of months determined by multiplying the percentage of impairment by forty-four (44) months.

(Emphasis added.) They reason that apportionment is required because this statutory language requires use of the AMA Guides and the AMA Guides provide for apportionment. We disagree. Apportionment is not required by the AMA Guides.

[¶ 17] In support of their position, the Division and the Employer rely upon language from Section 1.6b of the AMA Guides which states: "Apportionment analysis in workers' compensation represents a distribution or allocation of causation among multiple factors that caused or significantly contributed to the injury or disease and resulting impairment. The factor could be preexisting injury, illness, or impairment." Linda Coc-

chiarella and Gunnar B.J. Andersson, *Guides to the Evaluation of Permanent Impairment* § 1.6b, at 11 (5th ed.2001). There is nothing in the language of the AMA Guides cited by the Appellants that would lead us to the conclusion that apportionment is mandated by the AMA Guides. Other provisions of the AMA Guides make it clear that the decision to require or allow apportionment is one that must be made by each state. According to the AMA Guides: "Most states have their own customized methods for calculating apportionment. Generally, the most recent permanent impairment rating is calculated, and then the prior impairment rating is calculated and deducted. The remaining impairment rating would be attributed or apportioned to the current injury or condition." Linda Cocchiarella and Gunnar B.J. Andersson, *Guides to the Evaluation of Permanent Impairment* § 1.6b, at 12 (5th ed.2001); *see also* § 1.8, at 13 (recognizing that worker's compensation benefits are a creature of the individual state's specific system and "[d]etermining eligibility of benefits and the extent of disability is specified by statute and case law").

[¶ 18] The Guides provide an example of statutory language which would allow for apportionment:

> A common verbal formulation of the workers' compensation context might state, "in cases of permanent disability less than total, if degree of disability resulting from an industrial injury or occupational disease is increased or prolonged because of a preexisting physical impairment, the employer shall be liable only for the additional disability from the injury or occupational disease."

Linda Cocchiarella and Gunnar B.J. Andersson, *Guides to the Evaluation of Permanent Impairment* § 1.6b, at 12 (5th ed.2001) (footnote omitted). No similar statutory lan-

---

N.J. Stat. § 34:15–12(d) (West 2007), which states:

> If previous loss of function to the body, head, a member or an organ is established by competent evidence, and subsequently an injury or occupational disease arising out of and in the course of an employment occurs to that part of the body, head, member or organ, where there was a previous loss of

function, then the employer or the employer's insurance carrier at the time of the subsequent injury or occupational disease shall not be liable for any such loss and credit shall be given the employer or the employer's insurance carrier for the previous loss of function and the burden of proof in such matters shall rest on the employer.

guage exists in Wyoming. We must, therefore, resort to the general rule disallowing apportionment. 5 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 90.01, at 90–2 (1997). *See also Wallace v. Hanson Silo Co.*, 305 Minn. 395, 235 N.W.2d 363, 396 (1975) (holding that apportionment was improper in the absence of statutory authority), *superseded by statute*, Minn.Stat. § 176.101, Subd. 4a (1984), *as recognized in Giese v. Green Giant Co.*, 426 N.W.2d 879, 880–881 (Minn.1988) (explaining that apportionment is now proper due to the enactment of statute which authorizes and sets forth the procedure for apportionment between injuries); *Poehlman v. Leydig*, 194 Kan. 649, 400 P.2d 724, 729 (1965) (explaining that in the absence of a statutory provision to the contrary, there is no prorating the extent of the disability due to the accident itself on the one hand and the aggravation of employee's physical condition on the other); *Field v. Johns–Manville Sales Corp.*, 209 N.J.Super. 528, 507 A.2d 1209, 1210 (1986) (discussing that prior to the New Jersey Reform Act, any aggravation, acceleration or exacerbation of a pre-existing condition made an employer liable for the whole resultant disability).

[¶ 19] The Division and the Employer claim that even if apportionment is not expressly authorized by statute, we must nonetheless permit apportionment to give effect to the intent of the Act, which allows compensation solely for work-related injuries. They contend that failing to recognize apportionment is contrary to this intent and to existing Wyoming case law. The Division and the Employer cite to our decisions in *Haynes v. State ex rel. Wyoming Workers' Compensation Div.*, 962 P.2d 876 (Wyo.1998) and *Taylor v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2003 WY 83, 72 P.3d 799 (Wyo.2003) as support for their position.

[¶ 20] In *Haynes*, an employee suffered a seizure as a result of a fall at work which caused a material aggravation of a pre-existing non-symptomatic arteriovenous malformation. *Haynes*, 962 P.2d at 878. The Division paid the medical bills related to the seizure, but denied benefits when the employee sought medical treatment to separately repair the pre-existing condition. *Id.* We affirmed the denial of benefits finding that the Medical Commission correctly distinguished the work-related aggravation of a pre-existing condition from the non-work related repair of that condition. *Id.*, 962 P.2d at 879. We stated that the "fall did not change the need for, or the extent of, the treatment. . . ." *Id.*, 962 P.2d at 878–879.

[¶ 21] Mr. Faulkner's case is distinguishable from the situation addressed in *Haynes*.[3] In *Haynes*, the employee failed to prove the causal connection between the work-related injury and the medical treatment for the pre-existing condition. No such absence of proof exists here. The Medical Commission specifically found that Mr. Faulkner's back condition and impairment were aggravated by the work injury.

[¶ 22] In *Taylor*, an employee suffered a serious work-related injury at a sawmill resulting in a partial amputation of the employee's left foot. *Taylor*, ¶ 1, 72 P.3d at 800. Doctors initially assessed the permanent par-

3. The Division and the Employer also cite to *Bourgoin v. J.P. Levesque & Sons*, 726 A.2d 201 (Me.1999), for the proposition that apportionment is proper even in the absence of an apportionment statute. In *Bourgoin*, an employee, who had a pre-existing diabetic condition, sought permanent impairment benefits after suffering a work-related back injury. *Id.*, 726 A.2d at 201. The Workers' Compensation Board found that the employee was entitled to a 23% whole person permanent impairment rating for his back injury, but did not award benefits for a 30% permanent impairment rating related to the pre-existing diabetic condition. *Id.* The employee appealed the decision claiming that a "whole body" approach to rating the permanent impairment was required. *Id.*, 726 A.2d at 202–203. The Maine Supreme Court looked to its statutory definition of "permanent impairment," which defined the term as "any anatomic or functional abnormality or loss existing after the date of maximum medical improvement that results from the injury," to affirm the denial of benefits. *Id.*, 726 A.2d at 202 (emphasis omitted). Based on the definition, the court concluded that the employee was not entitled to benefits because the pre-existing diabetic condition did not result from the work-related back injury. *Id.* We find the employee's condition in *Bourgoin* distinguishable from Mr. Faulkner's condition. In *Bourgoin*, the employee's diabetic condition was not materially aggravated by the work-related back injury. As a result, no casual connection could be made. In addition, Maine's statutory provision concerning permanent impairment benefits is different from Wyoming's statutory provision.

tial impairment rating at seventy-five percent (75%). *Id.* Thereafter, the employee underwent surgery to release the left Achilles tendon, resulting in an increased impairment rating of eighty-three percent (83%). *Id.*, ¶ 4, 72 P.3d at 801. Because the employee already received payment for a seventy-five percent rating, the Division deducted that amount from the new impairment rating. *Id.* The employee sought review, claiming the deduction was improper. *Id.*, ¶ 6, 72 P.3d at 801. Upon our review, we found that the deduction was proper because otherwise, the employee would receive a double recovery. *Id.*, ¶ 13, 72 P.3d at 803.

[¶ 23] Mr. Faulkner's situation is also distinguishable from that in Taylor. Prior to the December 2000 work-related injury, Mr. Faulkner did not receive an impairment rating, or any benefits for a permanent partial impairment. Rather, Mr. Faulkner was able to maintain his employment without restrictions, despite his pre-existing back condition. After his December 2000 work-related injury materially aggravated his pre-existing condition, Mr. Faulkner was unable to continue his employment. There is no evidence suggesting that Mr. Faulkner is receiving a double recovery.[4]

### CONCLUSION

[¶ 24] In conclusion, we find no error in the Medical Commission's decision. The Wyoming legislature has not enacted a statute that requires apportionment of an impairment rating due to a pre-existing condition. Our decision is consistent with our case law recognizing that material aggravation of a pre-existing condition is a compensable injury and is also in accord with the general rule disallowing apportionment in the absence of a specific statute requiring apportionment.

[¶ 25] Affirmed.

---

4. *See, e.g., American Can Co. v. Industrial Acci. Com.,* 196 Cal.App.2d 445, 16 Cal.Rptr. 424 (1961) (finding it improper to apportion permanent disability awards if caused in part by aggravation of a preexisting condition); *Bailey v. Liberty Mutual Ins. Co.,* 766 S.W.2d 496, 498 (Tenn. 1989) (holding that "an employer is liable for disability resulting from injuries sustained by an employee arising out of and in the course of his employment even though it aggravates a previous condition with resulting disability far greater than otherwise would have been the case").