980 A.2d 236 (2009)
2009 VT 81
Nancy KAPUSTA
v.
DEPARTMENT OF HEALTH/RISK MANAGEMENT.
No. 08-383.
Supreme Court of Vermont.
July 24, 2009.
*237 Christopher McVeigh of McVeigh ♦ Skiff, Burlington, for Plaintiff-Appellee/Cross-Appellant.
Andrew C. Boxer and Robert D. Mabey of Ellis Boxer & Blake, Springfield, for Defendant-Appellant/Cross-Appellee.
Present: REIBER, C.J., DOOLEY, JOHNSON, SKOGLUND and BURGESS, JJ.
DOOLEY, J.
¶ 1. In this workers' compensation action, employer, Vermont Department of Health, appeals from an opinion of the Commissioner of the Department of Labor declining to apportion the responsibility for a permanent partial impairment between claimant's nonwork-related condition and her work-related injury. Employer contends that Vermont law requires *238 apportionment in this case. Alternatively, employer asserts that if the Commissioner was not required to apportion, but had the discretion to do so, she abused that discretion by declining to apportion in this case. Claimant, Nancy Kapusta, cross-appeals, arguing that the Commissioner reached the right result for the wrong reason because the law prohibits apportionment and the Commissioner has no discretion to allow it. We affirm the Commissioner's conclusion that the relevant statutes neither require nor forbid apportionment in this case; rather, the statutes leave this issue to her discretion. We further affirm her decision because it was not an abuse of that discretion to decline to apportion the impairment in this case.
¶ 2. In an opinion issued on September 4, 2008, the Commissioner found the following facts. Claimant has been employed by the State of Vermont since 1987 as a health outreach specialist, with her time divided between offices in Barre and Morrisville. On October 27, 2004, claimant underwent surgery, performed by Dr. Glen Neale, to replace her left hip. This operation was unrelated to her employment, and she did not receive any workers' compensation for the hip impairment that led to the surgery. She was able to return to full-time work within six weeks, by which time she had ceased to take pain medication and was able to resume all of her normal activities.
¶ 3. On February 8, 2005, claimant slipped on ice in employer's parking lot, causing her hip and thigh area to twist, resulting in immediate pain. Since that incident, she has experienced daily left-hip pain, for which she takes over-the-counter medication. The pain from her injury has substantially limited her professional, household, and recreational activities. It has limited her ability to walk, to use stairs, and to carry items in front of her. She begins to limp by the end of the work day. Moreover, her injury has reduced her ability to engage in recreation she enjoyed prior to the injury, such as hunting and bicycling.
¶ 4. The Commissioner considered medical evidence from both Dr. Neale and an independent medical examiner, Dr. Verne Backus. Applying the American Medical Association Guides to the Evaluation of Permanent Impairment ("AMA Guides"), Dr. Neale initially determined that claimant's work-related injury resulted in a 6% whole-person impairment. In January 2007, Dr. Neale revised his opinion, finding that claimant had a 15% whole-person impairment, all resulting from the work-related injury. Even though the AMA Guides provide impairment ratings that corresponded to a range of hip surgery results, Dr. Neale did not apply them because claimant reported no pain after her surgery and prior to her injury.
¶ 5. Dr. Verne Backus performed his independent medical examination on March 16, 2007. Also applying the AMA Guides, Dr. Backus determined that claimant had a 20% whole-person impairment. In disagreement with Dr. Neale, he further determined that, of this 20% impairment, 5% was attributable to the work-related injury and 15% to the hip replacement. In addition, his examination showed that the work-related injury had aggravated claimant's prior hip condition. Dr. Backus offered no opinion on how the 20% impairment should be apportioned in relation to its causes under Vermont law.
¶ 6. The Commissioner adopted Dr. Backus' conclusions, finding that claimant suffered a 20% permanent partial impairment, with 15% resulting from her preexisting hip condition and 5% from her work-related injury. The Commissioner determined that the AMA Guides did not require her to apportion the impairment *239 to its causes. She also determined that she was not statutorily required in this case to apportion the impairment. She held, therefore, that apportionment in this case was discretionary. Because "[c]laimant was not at all limited prior to her work injury" and "would not be limited or in pain at all if not for her work injury aggravating the condition," the Commissioner decided not to apportion and awarded compensation based on the 20% permanent partial impairment. This appeal followed.
¶ 7. We note that the issue in this case is not whether claimant suffered a compensable injury and is entitled to compensation, but rather whether the amount of compensation must be reduced to reflect a preexisting hip impairment. The Commissioner concluded that she could reduce the amount to reflect the preexisting impairment, but exercised her discretion not to do so. Both employer and claimant argue that this decision was wrong, but for opposite reasons. Employer argues that 21 V.S.A. § 648(b) requires apportionment. Claimant argues that 21 V.S.A. § 648(d) prohibits apportionment. Alternatively, if we hold that apportionment is within the Commissioner's discretion, employer argues that the Commissioner abused that discretion by refusing to apportion in this case.
¶ 8. We start with the statutory construction issues. Absent a clear indication of error, we will defer to the Commissioner's construction of the workers' compensation statute. See Wood v. Fletcher Allen Health Care, 169 Vt. 419, 422, 739 A.2d 1201, 1204 (1999). In interpreting a statute, we look to the statute's plain meaning when the language is clear and unambiguous. "[W]here there is ambiguity, we look to the general context of the statutory language, the subject matter, and the effects and consequences of our interpretation." Shea v. Metcalf, 167 Vt. 494, 498, 712 A.2d 887, 889 (1998). We resolve any reasonable doubts in favor of the injured worker because the workers' compensation statutes were enacted for their benefit. Smith v. Desautels, 2008 VT 17, ¶ 17, 183 Vt. 255, 953 A.2d 620.
¶ 9. Employer relies upon a 1994 amendment to the workers' compensation statutes, in which the Legislature incorporated the AMA Guides' whole-person analysis, in contrast with the injury-specific approach previously applied. See 1993, No. 225 (Adj.Sess.), § 7 (adding 21 V.S.A. § 648(b)); see also 1977, No. 182 (Adj.Sess.), § 13 (outlining former schedule of injuries ranging from "loss of hearing" to "loss by separation of a great toe"). At that time, the statute, 21 V.S.A. § 648, was revised to add subsection (b) to provide in relevant part that "[a]ny determination of the existence and degree of permanent partial impairment shall be made only in accordance with the whole person determinations as set out in the most recent edition of the [AMA Guides]." 1993, No. 225 (Adj.Sess.), § 7.[*] Employer argues that the plain language of § 648(b) requires apportionment because the section incorporates the AMA Guides and the AMA Guides require apportionment. The Commissioner rejected this construction of § 648(b), and we agree for a number of reasons.
¶ 10. First, employer claims too much from the statutory language. Even if the *240 AMA Guides could be read to require apportionment as employer argues, § 648(b) provides that the AMA Guides are to be used only to determine "the existence and degree of permanent partial impairment." We conclude that the issue of apportionment, which is an issue of workers' compensation policy rather than medical judgment, does not fall within this statutory language.
¶ 11. The second reason is related to and flows from the first. Consistent with the purpose to assist medical professionals, and not to set workers' compensation policy, the AMA Guides do not require apportionment. Employer can point to no specific language that requires use of apportionment to determine causal responsibility for impairments. Instead, the AMA Guides contemplate that states may design and implement apportionment schemes appropriate to their needs and policy objectives. Section 1.6b of the AMA Guides states that "[i]n some instances, the physician may be asked to apportion or distribute a permanent impairment rating between the impact of the current injury and the prior impairment rating," L. Cocchiarella et al., Guides to the Evaluation of Permanent Impairment § 1.6b, at 11 (5th ed.2001), and further explains that "[m]ost states have their own customized methods for calculating apportionment," id. at 12. The AMA Guides' language is plainly permissive and descriptive, rather than prescriptive. The one case from another jurisdiction on this issue specifically holds that the AMA Guides do not require apportionment, for the reasons we have just stated. See State ex rel. Wyo. Workers' Safety & Comp. Div. v. Faulkner, 2007 WY 31, ¶¶ 16-18, 152 P.3d 394.
¶ 12. Third, the Legislature specifically addressed apportionment in limited circumstances in 21 V.S.A. § 648(d), a subsection added at the same time as the subsection relied upon by employer, providing in relevant part that "[a]n impairment rating determined pursuant to [§ 648] shall be reduced by any previously determined permanent impairment for which compensation has been paid." See 1993, No. 225 (Adj.Sess.), § 7 (adding 21 V.S.A. § 648(d)). If employer's position were correct, the Legislature would not have needed to require apportionment in one specific circumstance in § 648(d), because apportionment would be required in all circumstances under § 648(b). We will not interpret a statute so as to render it duplicative. See, e.g., Loiselle v. Barsalow, 2006 VT 61, ¶ 16, 180 Vt. 531, 904 A.2d 1168 (mem.) ("We presume that the Legislature does not enact meaningless legislation, and that it chooses its language advisedly so as not to create surplusage." (citation omitted)).
¶ 13. For these reasons, we affirm the Commissioner's decision that § 648(b) does not require apportionment in any case. This leads us to claimant's cross-appeal argument that § 648(d) prohibits apportionment in any case not covered by its specific apportionment requirement. Claimant argues that by requiring apportionment under § 648(d) in instances where the claimant received compensation for "any previously determined permanent impairment," the Legislature intended to forbid apportionment in all other circumstances. The Commissioner rejected that argument and interpreted § 648(d) as requiring apportionment when compensation has been paid, but not restricting the Commissioner's discretion in other cases. We concur that § 648(d) merely identifies one situation in which apportionment is required and does not address apportionment in other circumstances.
¶ 14. Claimant's argument relies primarily on the maxim "expressio unius est exclusio alterius"that is, the expression *241 of one thing is the exclusion of another. Thus, claimant's theory is that the maxim directs that the Legislature's expression that apportionment must happen where the claimant receives compensation for a preexisting impairment means that apportionment is prohibited if claimant never received compensation for that impairment. We have described this maxim as "relatively weak among rules of statutory construction," Oxx v. Dep't of Taxes, 159 Vt. 371, 375, 618 A.2d 1321, 1324 (1992), and have often discarded it. See, e.g., Delta Psi Fraternity v. City of Burlington, 2008 VT 129, ¶ 17, 185 Vt. ___, 969 A.2d 54. Here, its application is countered by another rule of statutory construction that we find more persuasive.
¶ 15. In Marsigli Estate v. Granite City Auto Sales, Inc., 124 Vt. 95, 197 A.2d 799 (1964), we considered a case in which a claimant was impaired by cancer and a work injury accelerated the progress of the disease and the disability. The employer argued that the compensation and medical benefits should be apportioned between the disease and the work injury, with the employer responsible only for those caused by the latter. We held: "Our statute makes no exceptional provision for apportionment of the compensation or medical benefits between the injury and pre-existing disease. Without such a provision, there is no requirement that the commissioner ... determine the relative contribution of the accident and the prior disease to the final result." Id. at 104, 197 A.2d at 806; see also Stamper v. Univ. Apartments, Inc., 147 Vt. 552, 554, 522 A.2d 227, 228 (1986) (upholding Commissioner's refusal to apportion current permanent impairment percentage between current work injury and prior injury). Thus, the law under Marsigli Estate, in effect when § 648(d) was enacted, was that the statutes left the issue of apportionment to the Commissioner, with no requirement or prohibition. As a maxim of statutory construction, we presume that the Legislature is familiar with our interpretation of statutes and does not overrule this interpretation unless it does so explicitly. See, e.g., Dubaniewicz v. Houman, 2006 VT 99, ¶ 13, 180 Vt. 367, 910 A.2d 897 (according significance to the fact that the Legislature amended the statute at issue after the relevant precedent was issued, and yet did not disturb the holding of that precedent "despite plainly being aware of our interpretation of the statute"); Heffernan v. Harbeson, 2004 VT 98, ¶ 9, 177 Vt. 239, 861 A.2d 1149 ("When we interpret statutes, we presume that the Legislature was mindful of relevant precedents and prior legislation.").
¶ 16. The Commissioner examined 21 V.S.A. § 648 and our case precedents and concluded that the statute, as currently worded, did not take away her discretion to apportion in cases involving preexisting uncompensated impairments. We find no clear indication of error and defer to the Commissioner's interpretation of the relevant statutes.
¶ 17. Since we affirm the Commissioner's decision that she has discretion not to apportion between preexisting uncompensated impairments and work-related injuries, we must address employer's argument that she abused her discretion in this case. Employer essentially makes two arguments as to why the Commissioner's decision constitutes an abuse of discretion, and both revolve around the Commissioner's determination that claimant was fully functional and pain-free at the time of the work-related injury. First, employer argues that the determination is against the weight of the evidence, citing evidence of claimant's impairment from hip surgery and knee problems. Our applicable standard of review is much more limited than *242 this argument supposes. When reviewing the Commissioner's factual findings, we will overrule only when those findings have no evidentiary support in the record or where the evidence is so slight that it is an irrational basis for the result reached. Coburn v. Frank Dodge & Sons, 165 Vt. 529, 533, 687 A.2d 465, 467-68 (1996). Whatever the weight of the evidence, we must affirm under the applicable standard. The Commissioner had a sufficient evidentiary basis to find that claimant had no functional impairment at the time she slipped on the ice.
¶ 18. Finally, employer argues that the Commissioner's determination is inconsistent with the medical evidence and the AMA Guides, which assigned a 15% impairment to claimant based on her hip replacement. This argument is essentially a recasting of employer's argument that the AMA Guides leave the Commissioner with no discretion. We disagree. In deciding whether to apportion, the Commissioner could reach her own determination of the extent to which the hip replacement interfered with the ability of claimant to do her job and the extent of that ability after the work-related injury. The Commissioner's determination is supported by the evidence, and supports the conclusion that apportionment would be unjust because claimant's hip replacement did not limit her work functionality. We find no abuse of discretion.
Affirmed.
NOTES
[*] Section 648(b) has since been revised to reference the fifth edition of the AMA Guides specifically. See 21 V.S.A. § 648(b), as amended by 2007, No. 208 (Adj.Sess.), § 6 ("Any determination of the existence and degree of permanent partial impairment shall be made only in accordance with the whole person determinations as set out in the fifth edition of the [AMA Guides].").